# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REGINA A. ETHERIDGE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-13-262-SPS** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Regina A. Etheridge requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the cased REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423

(d)(2)(A).  Social security regulations implement a five-step sequential process to

evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42

U.S.C. § 405(g).  The Court's review is limited to two inquiries:  (1) whether the decision

was supported by substantial evidence, and (2) whether the correct legal standards were

applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].

The term "substantial evidence" requires "'more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the

evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of*

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court

must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful
activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to
establish that she has a medically severe impairment (or combination of impairments) that
significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the
claimant is engaged in substantial gainful activity, or if her impairment is not medically severe,
disability benefits are denied.  At step three, the claimant's impairment is compared with certain
impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed
impairment (or impairments "medically equivalent" to one), she is determined to be disabled
without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant
must establish that she lacks the residual functional capacity (RFC) to return to her past relevant
work.  The burden then shifts to the Commissioner to establish at step five that there is work
existing in significant numbers in the national economy that the claimant can perform, taking
into account her age, education, work experience, and RFC.  Disability benefits are denied if the
Commissioner shows that the claimant's impairment does not preclude alternative work.  *See*
*generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 4, 1965, and was forty-six years old at the time of the administrative hearing (Tr. 26, 121). She completed the ninth grade, and has no past relevant work (Tr. 20, 137). The claimant alleges she has been unable to work since March 22, 1995, due to fractures in her back and right arm, and mental impairments (Tr. 136).

## Procedural History

On March 10, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Charles Headrick held an administrative hearing and determined that the claimant was not disabled in a written decision dated February 1, 2012 (Tr. 10-21). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), in that she was limited to performing simple tasks with routine supervision, was able to relate to supervisors and peers on a superficial work basis, and was unable to relate to the general public (Tr. 14).

The ALJ concluded that although the claimant had no past relevant work to which she could return, she was not disabled because there was other work she could perform, *i. e.*, motel housekeeper, bench assembler, and semi-conductor assembler (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to include all her mental limitations in her RFC; (ii) by failing to propose hypothetical questions to the vocational expert (VE) that aligned with her RFC; (iii) by failing to properly evaluate the opinions of the certain physicians as well as a Third Party Function Report; and (iii) by failing to properly assess her credibility. In support of her claim that the ALJ failed to properly analyze her credibility, the claimant argues that the ALJ failed to account for numerous low Global Assessment of Functioning (GAF) scores in the record. The Court finds that the ALJ did fail to properly analyze this evidence, and the decision of the Commissioner must therefore be reversed.

The medical evidence reflects that the claimant has the severe impairments of degenerative changes of the cervical and lumbar spine, and depression (Tr. 12). On January 10, 2010, the claimant was hospitalized at the Carl Albert Community Mental Health Center with a presumptive diagnosis of psychotic disorder, rule out mood disorder, formal thought disorder; history of stimulant, benzodiazepines, and opiate abuse; rule out withdrawal syndrome or substance toxicity (delirium) (Tr. 212). She was discharged on January 27, 2010, when she was considered to be free of suicidal and homicidal ideations and was not considered to be a danger to herself or others, demonstrating behavior control acceptable for the discharge environment (Tr. 213).

Upon admission, she had been assessed a global assessment of functioning score of 20, but at discharge her GAF was 51, with a diagnosis of psychotic disorder NOS, polysubstance dependence, amphetamine dependence in remission, personality disorder NOS, teeth pain, and history of drug use (Tr. 213-214). Records from Green Country Behavioral Health indicate that the claimant began receiving treatment with them on February 19, 2010 (Tr. 229). She was diagnosed with Bipolar I disorder, and further received medication management from this clinic (Tr. 229, 246-250, 347-356, 367-371). Notes reflect that she was assessed a GAF of 42 on April 6, 2010; a GAF of 43 on November 2, 2010; and a GAF of 45 on May 5, 2011 (Tr. 229, 392, 412). The claimant largely reported that she did well on her medications, but often reported continued anxiety (Tr. 246-250, 281-288, 347-356, 367-371).

On May 6, 2010, the claimant presented to complete a disability report at the field office, and the interviewer difficulty getting accurate answers because "she constantly talked and rambled" (Tr. 133). State reviewing physician Carolyn Goodrich, Ph.D., found on her PRT assessment that the claimant had moderate limitations in restrictions of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, and pace; as well as one or two episodes of decompensation, each of extended duration (Tr. 271). Dr. Goodrich found that claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate to the general public, and adapt to a work situation (Tr. 277). She also completed a more detailed check-off "Mental [RFC] Assessment," checking that the claimant was markedly limited in the ability to carry our detailed

instructions, but had no other significant limitations in the area of sustained concentration and persistence (Tr. 275-276).

In October 2011, the claimant explained that she had mouth surgery and was in pain, but that she was sleeping well and denied depression (Tr. 358). That same month, she was assessed a GAF of 60 (Tr. 60). In December, the claimant reported increased paranoia and that she was not sleeping well, and was assessed a GAF of 55 (Tr. 363-366).

As to her physical impairments, the claimant was also treated at the Health & Wellness Center in McIntosh County. She presented on August 23, 2010, to establish care, complaining of low back pain, pain all over, and numbness in her hands and feet (Tr. 303). Following the assessment, they referred her to pain management (Tr. 303, 309). On August 25, 2010, an x-ray of the claimant's left wrist revealed a severely comminuted fracture distal shaft of the radius and fracture of the ulna steroid, due to a fall (Tr. 322). She underwent surgery, and noted some pain and numbness afterwards, but the surgeon found it was slightly improved and that the wound was well-healed with fairly good passive range of motion despite tenderness (Tr. 325, 334).

In May 2010, consultative examiner Geo-Phillips Chaco, M.D., assessed the claimant with lumbar strain with a history of fractured back, and mental breakdown with depression (Tr. 254). On examination, he noted that the claimant had back pain on flexion at 90 degrees, that she had a full range of motion of lumbar, cervical, and thoracic spine, and that straight leg raising tests were negative bilaterally (Tr. 254).

She continued to report lower back pain and a November 30, 2010 MRI of the cervical spine revealed mild-moderate degenerative changes at C3-4, C4-5, C5-6, and

C6-7 (Tr. 404-406). An MRI of the lumbar spine that same day revealed mild-moderate degenerative changes with varying levels of central canal and foraminal narrowing at L3-4, L4-5, and L5-S1 (Tr. 408-409). On May 23, 2011, the claimant presented with complaints of lower back pain and reported she had been helping her parents pick up sticks in the yard. She was assessed with asthma and lumbago, given an injection, and instructed to return if symptoms worsened (Tr. 341-344).

The claimant's mother completed a Third Party Function Report, noting that the claimant lived with her. Her mother stated that she has difficulty staying focused long enough to watch a television show, that she had a dog but had to give it away, and that she has difficulty standing for long periods of time because her back hurts (Tr. 146-147). She further stated that the claimant needed occasional reminders to take her medicine, prepared meals of sandwiches and tv dinners daily, and performed chores including washing her own clothes, dusting, and washing dishes (Tr. 148). She indicated that the claimant does not have friends anymore and is afraid of a lot of things including the phones, people watching her, and sleeping alone (Tr. 151-152).

At the administrative hearing, the claimant testified that she has lost all of her friends due to her mental impairments, and that that she does not go out in public much, except for counseling, the doctor's office, and the grocery store with her mother (which brings on anxiety attacks) (Tr. 38-39). She testified that she has difficulty concentrating because she cannot remember things, that she talks when she is not supposed to, that she has crying spells, and that lately she's been experiencing paranoia (Tr. 40-41).

In his written opinion, the ALJ summarized the claimant's hearing testimony, her mother's Third Party Function report, and the medical evidence. As to her mother, the ALJ found that she would benefit from an award of benefits to the claimant because they lived together and that allowed him to partially discount her testimony, and further gave it little weight because she was not a physician or health field professional (Tr. 15). As to the relevant medical records, the ALJ noted that although state reviewing physicians found the claimant did not have a severe physical impairment, subsequent additional records (including x-rays and MRIs for the claimant's back) indicated a limitation to light work (Tr. 18). The ALJ also noted, *inter alia*, that the claimant's objective signs and findings were "within normal limits," thereby ignoring a number of GAF scores that were well below such limits.

"Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have discussed the claimant's low GAF scores from Green Country Behavioral Health and elsewhere to determine whether such scores were due to occupational factors. *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [the claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low

GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted]. *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**